WILLIE E. DAVIS,

        Petitioner,

                                       CASE NO. 05-CV-60271-AA
v.                                   HONORABLE JOHN CORBETT O'MEARA

BLAINE LAFLER,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

### I.      Introduction

Willie E. Davis ("Petitioner"), a state prisoner presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for writ of habeas corpus challenging his convictions on eight counts of first-degree criminal sexual assault and one count of second-degree criminal sexual assault which were imposed following a jury trial in the Oakland County Circuit Court in 2002. Petitioner was sentenced as a fourth habitual offender to concurrent terms of 75 to 150 years imprisonment.

In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel, the trial court's refusal to re-open proofs for the defense, the admission of other acts evidence, and his sentence. For the reasons set forth, the Court denies the petition for writ of habeas corpus.

### II.     Facts and Procedural History

Petitioner's convictions arise from his sexual assault of his daughter, Jequanna Davis ("Jequanna"), and his niece, Channa Brown ("Channa"), at his mother's home in Pontiac,

Michigan. In a 2001 case, Petitioner was charged with two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct involving Jequanna for incidents which occurred from October, 1993 through October, 2001. In a 2002 case, Petitioner was charged with six counts of first-degree criminal sexual conduct, five involving Channa and one involving Jequanna, for events which occurred between September, 1988 and January, 1989. Petitioner was represented by appointed counsel, Howard Arnkoff, on the 2002 case and by retained counsel, David Perlman, on the 2001 case. The attorneys operated as co-counsels for Petitioner at a joint trial.

Both victims testified at trial. Jequanna Davis, who was 15 years old at the time of trial, testified that she lived with her grandmother, Bertreal Blunt, in Pontiac, Michigan and that Petitioner lived with them on and off at the time of the incidents. She testified that one night after she turned 15, Petitioner came to her bed, engaged in sexual intercourse, and ejaculated on her stomach. He warned her that grandmother would not believe her if she told what happened. Jequanna subsequently experienced pain when she went to the bathroom, was taken to the doctor by her grandmother, and received medication. She did not report the assault to the doctor because her grandmother was present. The next day, Jequanna left her grandmother's home because she did not want to be near Petitioner and she had been suspended from school. She went to her friend Alicia's home and spoke to Alicia's mother, who took her to the police station to make a report.

Jequanna also testified about prior incidents of abuse. She recalled an incident when she was seven years old and at her grandmother's home alone with Petitioner. He told her to come downstairs with just a nightgown on, had her lay down in front of him on a couch, pressed his

penis against her backside, and put his fingers inside her vagina. When her grandmother arrived home, Petitioner told her to go upstairs and go to bed. He also said that her grandmother would not believe her if she told her what happened. Jequanna also recalled an incident when she was nine years old and living with her grandmother. Petitioner came into her attic bedroom, got on top of her, penetrated her with his penis, and ejaculated. She cried because this hurt her and she bled afterward. Petitioner told her that her grandmother would not believe her if she told.

Jequanna testified that she told her grandmother what was happening to her several times, that her grandmother talked to Petitioner, but nothing really happened. She also told her friend Alicia what was happening to her, and told a cousin about the abuse years later.

Jequanna told a school nurse and a school counselor about the abuse when she was in the seventh grade. Child protective services were called and visited Jequanna at home. While the child protective services worker was talking to Jequanna, her grandmother was in the back room. When the worker left, her grandmother told Jequanna that she did not want to go to court and asked her to call protective services and tell them that she had lied. Jequanna did as her grandmother asked, but the protective services worker did not believe her. Jequanna denied that anyone had told her make the telephone call. Once the police were involved, Jequanna stayed with various relatives and was eventually placed in foster care. Jequanna admitted that she wrote a letter to her grandmother denying the abuse and apologizing some time after the preliminary examination because she wanted to go back to her grandmother.

Channa Brown, who was 20 years old at the time of trial, testified that she and her siblings spent most of her childhood living with her grandmother, Bertreal Blunt, in Pontiac, Michigan and that Petitioner was her uncle. Channa said that it seemed as though Petitioner

abuse her every day starting when she was four or five years old. She recalled one morning when she was six and Petitioner called her into his bedroom where he was with Jequanna, who was about two years old. Petitioner pulled her toward him, took off her panties, licked her vagina, rubbed his penis on her vaginal area, and put a finger in her vagina. He also took off Jequanna's diaper and licked her vagina. Petitioner warned her that she better not tell. Petitioner also called Channa's older sister, Chaunta, into the bedroom and began licking her vagina. He then made the three girls take turns getting on top of him and rubbing on his penis. Channa also testified that Petitioner made her suck on his penis on several occasions, but could not recall if he made her do so on this occasion.

Channa testified that she told her grandmother about the abuse when she was seven years old, but her grandmother said that she was lying and sent her to the basement. Petitioner was in the basement. He told her to go upstairs and put a skirt on without panties. Channa reported this to her grandmother, who told her to do what Petitioner asked and said that she would come downstairs right after her. Channa did as she was told. When she returned to the basement, Petitioner licked her vagina. Her grandmother came downstairs, asked what was going on, and sent Channa upstairs. Channa told her older sister, Jatuan, what had happened. Following this incident, Petitioner left the house for a few days. Channa's grandmother told her not to tell anyone what had happened and put a lock on the upstairs door. Channa testified that she saw Petitioner picking the lock a week later and that she continued to be abused. Channa recalled that Petitioner woke her one night, pulled off her panties, put Vaseline on his hand and stuck his finger in her vagina, and then put Vaseline on his penis and put his penis inside her vagina. Channa cried because it hurt. Petitioner told her to be quiet and put his hands over her mouth to

4

keep her quiet. Channa still hurt the next day and was bleeding. She told her grandmother what had happened, but her grandmother told her she must be dreaming or lying. Her grandmother told her she was just chafed and put her in a bath with Epsom salt and vinegar.

Channa left her grandmother's home in 1991 and went to live with her father. Channa told her father about Petitioner's abuse, but asked him not to harm Petitioner because it would hurt her grandmother. Channa also testified that her mother told her that she tried to report Petitioner to the police but they did not believe her because she was an alcoholic. Channa also testified that Petitioner came to Chicago in 2000 or 2001 with some other relatives. When he asked to hold Channa's baby, she gave him a funny look. Petitioner responded by apologizing for the molestation.

The prosecution presented testimony from other relatives regarding Petitioner's sexual assaults upon them when they were minors. Defense counsel objected to the admission of the other acts evidence at trial. The trial court allowed the evidence to be admitted as evidence of a common plan or scheme, but instructed the jury about the proper use of such evidence.

Chaunta Brown ("Chaunta"), who was 22 years old at the time of trial, recalled the incident with Channa, Jequanna, and herself on Petitioner's bed and said that the assault occurred when she was eight years old. She also said that she told Jatuan about the incident, which caused a fight between Jatuan and Petitioner.

Jatuan Williams ("Jatuan"), who was 31 years old at the time of trial, testified that Petitioner molested her while she was living with her grandmother from when she was three years old until she was nine years old. She recalled an incident when she was five and living with her grandmother, Petitioner, and other relatives in Grand Rapids, Michigan. One night,

Petitioner sent her up to her room as punishment, then came to her room with her cousin Robin. Petitioner removed her pants, licked her vagina, did the same to Robin, and ejaculated on her stomach. Petitioner warned her not to tell. She told her grandmother anyway, but the abuse continued. Jatuan testified that when she was nine years old and living with her mother in Chicago, she woke up one night to find Petitioner on top of her with his penis in her vagina. She could smell liquor on him. When he finished, he fell asleep on her bed with his pants down. Jatuan woke up the adults in her house and brought them into the room. A fight occurred and Petitioner never touched her again. Jatuan also testified that she had several fights with Petitioner regarding her sisters and Jequanna. Jatuan did not go to the police because she was programed to believe that no one would help them. In 1994, when she was 22 or 23 years old, Jatuan told her grandmother about the abuse in detail, but her grandmother told her that she was exaggerating and lying and needed to get over it.

Regina Turnspeed ("Regina"), who was 31 years old at the time of trial, testified that Petitioner was her cousin and Bertreal Blunt was her aunt. When Regina was four years old and living with her grandmother, she felt someone touch her while she was sleeping in a room with her brother and cousins. A pillow was placed on her face, her underwear was removed, and she felt pressure on her vaginal area. Regina told her mother the next day thinking that it was her brother. The next night, however, Petitioner came into the room, covered Regina's mouth, removed her underwear, and penetrated her vagina with his penis. Regina told her mother what happened and they left the house the next day.

Robin Russell ("Robin"), who was 32 years old at the time of trial, testified that Petitioner was her cousin and Bertreal Blunt was her aunt. When she was three or four years old

and living with her aunt, Petitioner fondled and licked her vagina. On another occasion, Petitioner made her and Jatuan stand near each other and licked both of their vaginal areas. At other times, Petitioner penetrated her anus with his penis. These incidents occurred until she was seven or eight years old. Robin testified that she told her aunt about the abuse, but her aunt told her not to tell her mother. When she was six or seven years old, however, Robin reported the abuse to her mother.

Pontiac Police Detective Brian York testified that he interviewed Petitioner in October, 2001 about the sexual assault allegations. Petitioner denied abusing Jequanna and claimed that she was making things up because she was in trouble at school. When confronted with the additional allegations of abuse by other people, Petitioner said that they were all lying. However, Petitioner admitted that when he was younger he may have inappropriately touched some of his cousins by brushing his hands against them.

Petitioner did not testify at trial, but presented two defense witnesses. Catrice Brown ("Catrice"), who was 26 years old at the time of trial, testified that Petitioner was her uncle and that Channa, Chaunta, and Jatuan were her sisters. Catrice testified that she lived with her grandmother for a period of time in Michigan and that Petitioner resided there periodically. Catrice said that Petitioner never touched her inappropriately. She also testified that she had never heard that Petitioner had molested the other girls while they were growing up and that she was surprised by such allegations. John Blunt, Petitioner's older brother, testified that he had never heard of Petitioner molesting anyone, had not seen Petitioner sexually assault any of the cousins, and had not fought with Petitioner about such matters.

At the close of trial, the jury convicted Petitioner of eight counts of first-degree criminal

sexual conduct and one count of second-degree criminal sexual conduct. The trial court subsequently sentenced him as a fourth habitual offender to concurrent terms of 75 to 150 years imprisonment on those convictions.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the effectiveness of trial counsel, the trial court's refusal to re-open the proofs, and the admission of the other acts evidence. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Davis*, No. 243334, 2004 WL 357989 (Mich. Ct. App. Feb. 26, 2004) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Davis*, 471 Mich. 921, 688 N.W.2d 828 (2004).

Petitioner thereafter filed the present habeas petition, asserting the following claims as grounds for relief:

I. Denied effective assistance of counsel.

II. The trial court's refusal to allow re-opening of proofs for the presentation of some evidence and/or witnesses on behalf of defendant.

III. The trial court's allowance of "other acts" evidence consisting of allegations of out-of-state acts.

IV. Illegal sentencing.

Respondent has filed an answer to the petition asserting that it should be denied because the claims are unexhausted, not cognizable, and/or lack merit. Petitioner has filed a supplemental pleadings asserting that he is innocent and submitting recanting statements by Jequanna Davis and other witness statements in support of his claims.

### III. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a

federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Analysis

### A.    Exhaustion

#### A.    Exhaustion

As an initial matter, Respondent alleges that the petition should be dismissed because

Petitioner has failed to exhaust his sentencing claim in the state courts. A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A Michigan prisoner must raise each issue he seeks to present in a federal habeas proceeding to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. *See Mohn v. Bock*, 208 F.2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

This Court agrees with Respondent that Petitioner has not exhausted his sentencing claim in the state courts. Petitioner admits as much in his petition. Generally, a federal district court should dismiss a "mixed" petition for a writ of habeas corpus, that is, one containing both exhausted and unexhausted claims, "leaving the prisoner with the choice of returning to state court to exhaust his claims or amending and resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982); *see also Rust*, 17 F.3d at 160. While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). For example, an unexhausted claim may be addressed if pursuit of a state court remedy would be futile, *see Witzke v. Withrow*, 702 F. Supp. 1338, 1348 (W.D. Mich. 1988), or if the unexhausted claim is meritless such that addressing it would be efficient and not offend federal-state comity. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28

U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies). A federal district court also has discretion in "limited circumstances" to stay a mixed habeas petition to allow a petitioner to present unexhausted claims to the state courts and then return to federal court on a perfected petition. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

Having considered the issue, the Court finds that the interests of justice would be best served by adjudicating Petitioner's habeas claims. Further attempts at exhaustion in the state courts are likely to be futile. Additionally, the unexhausted claim lacks merit and may be denied on the merits despite the lack of exhaustion.

### B. Ineffective Assistance of Counsel Claim

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to prepare for trial, investigate and present witnesses, cooperate with co-counsel, and present a defense. Respondent contends that this claim lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.

*Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

In this case, the Michigan Court of Appeals concluded that trial counsel was not ineffective, addressing this issue as follows:

> Defendant argues that he was denied the effective assistance of counsel. Defendant was represented by two attorneys.  The first attorney was appointed to represent defendant in connection with the action brought in 2001.  A second attorney was retained by defendant's family when additional charges were brought in 2002.  Defendant argues that his first attorney failed to prepare for trial, failed to present a defense, communicated disdain for defendant by sitting with his back turned toward defendant throughout the trial, failed to move to dismiss for delay in prosecuting the action, and made inappropriate closing arguments.
>
> The right to counsel is not offended unless counsel's performance fell below an objective standard of reasonableness and the defendant was so prejudiced that he was deprived of a fair trial.  *People v. Pickens*, 446 Mich. 298, 338; 521 N.W.2d 797 (1994).  To establish prejudice, a defendant must show that there is a reasonable probability that the result of the proceeding would have been different, i.e., the jury would have had a reasonable doubt about guilt, absent the

13

alleged error.  *Id*. at 312.

Because defendant did not raise this issue in connection with a motion for a new trial or request for an evidentiary hearing in the trial court,  *People v. Ginther*, 390 Mich. 436, 442-443; 212 N.W.2d 922 (1973), appellate review is foreclosed unless the details of the alleged deficiencies are apparent on the record, *People v. Juarez*, 158 Mich. App. 66, 73; 404 N.W.2d 222 (1987).  Our review of the record fails to disclose support for defendant's claims.

Defendant has not demonstrated counsel's level of preparation.  To the contrary, the record contradicts defendant's claim that counsel was unprepared and offered no defense.  Appointed trial counsel filed a pretrial motion to exclude evidence, raised objections during the prosecution's proofs, cross-examined prosecution witnesses, conducted direct examination of a witness called by co-counsel, met before trial with that defense witness, and moved for a directed verdict at the conclusion of the prosecutor's proofs.  Appointed counsel disclosed on the record that potential defense witnesses were directed to co-counsel because co-counsel had been hired by the family and possessed the family's trust.  There is nothing on the record supporting defendant's contention that counsel was unprepared or that he failed to present a defense.

The record additionally does not disclose that counsel sat with his back turned toward defendant or, if he did, why he chose that seating position.  FN1  Nor does the record disclose whether an awkward seating arrangement was necessary due to the layout of the courtroom or the presence of multiple lawyers at the defense table, or whether counsel preferred to face the jury to analyze their reactions to the trial.

FN1.  At one point, counsel had difficulty hearing a witness, and the court suggested that counsel move to another chair.  It is not clear whether this is the incident of which defendant complains.

Although defense counsel stated during closing arguments that he had read a book about representing unpopular clients, defendant has failed to show prejudice from that statement.  Read in context, defense counsel also stated that "those who are unpopular, those who might be falsely charged, those who have allegations brought forth against them, they're the ones who need the lawyer the most....  The fact that Mr. Willie Davis is unpopular is not evidence of guilt at all....  As you know, the constitution protects Willie Davis just like it protects any of you, and he's presumed innocent until the State has convinced you beyond a reasonable doubt that he's guilty of something."  During closing argument, counsel conceded that defendant was having difficulties with counsel.  We will not second-guess defense counsel's strategy for diffusing the apparent tension between counsel and client, while focusing the jurors' attention to the issue of

guilt or innocence. Defendant has failed to overcome the strong presumption that counsel engaged in sound trial strategy. *People v. Rockey*, 237 Mich. App. 74, 76-77; 601 N.W.2d 887 (1999).

Defendant also argues that counsel should have moved to dismiss the case under the 180-day rule. MCL 780.131(1). Defendant has failed to fully present that argument in his brief, and, therefore, has not shown that the outcome would have been different had the motion been raised. By effectively abandoning this argument, defendant has failed to demonstrate prejudice.

*Davis*, 2004 WL 357989 at *1-2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Petitioner has failed to establish that he was denied the effective assistance of trial counsel. The record reveals that counsel was reasonably well-prepared for trial, filed pre-trial motions, cross-examined witnesses, made relevant objections, and gave an appropriate closing argument. Petitioner has not shown that trial counsel acted outside the range of reasonable conduct.

Petitioner claims that defense counsel Howard Arnkoff was ineffective for failing to investigate his case. Defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See, e.g., O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992). Petitioner has not established that defense counsel failed to take reasonable steps to prepare for trial, interview witnesses, or investigate potential defenses. The record indicates that Arnkoff spoke with Petitioner, reviewed documents, and gave co-counsel copies of transcripts and police reports that he had in his files. Petitioner does not indicate what additional information Arnkoff should have discovered which would have benefitted his case. Petitioner has also not shown how his defense would have

benefitted had Arnkoff provided him with additional transcripts or other documents. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

Petitioner relatedly claims that defense counsel, particularly Arnkoff, failed to interview and present witnesses on his behalf. Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Petitioner has not rebutted this presumption. Defense counsel challenged the testimony of the prosecution's witnesses and presented two defense witnesses. At trial, attorney Perlman stated that he had spoken to Petitioner's family about witnesses, that he had called pertinent witnesses, and that he believed additional witnesses would not have provided relevant and admissible evidence. Given this fact, Petitioner cannot establish that Arnkoff was deficient and/or that he was prejudiced by Arnkoff's failure to interview or present such witnesses.

Although Petitioner claims that additional witnesses would have testified for the defense, he has not submitted statements from most of them. The statements that Petitioner does submit from the purported additional witnesses are mostly testaments to his character and not relevant to whether the sexual assaults actually occurred. Petitioner has not presented

exculpatory evidence which counsel should have investigated or produced at trial that would have affected the outcome at trial. The record indicates that counsel took reasonable steps to investigate the matter and attempted to refute the prosecution's case by cross-examining witnesses and presenting a defense. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner further asserts that Arnkoff was ineffective because he waived his opening statement. Decisions concerning opening statements are matters of trial strategy. *See United States v. Williams*, 195 F.3d 823, 827 (6th Cir. 1999). Petitioner has not shown that counsel's strategy was unreasonable, nor has he shown that he was prejudiced by counsel's decision.

Petitioner claims that Arnkoff was ineffective because he exhibited disdain for Petitioner by sitting with his back to him and by discussing representing an unpopular client in making closing arguments. As noted by the Michigan Court of Appeals, however, the record does not indicate that counsel sat with his back to Petitioner and/or why such a seating arrangement may have occurred. Petitioner bears the burden of establishing entitlement to habeas relief. Furthermore, Arnkoff's closing argument, read in context, reveals that counsel was encouraging the jury to decide the case based upon the facts and reiterating that Petitioner was presumed innocent and the prosecution had to establish his guilt beyond a reasonable doubt. Petitioner has failed to show that counsel was deficient in this regard.

Moreover, given the significant evidence of guilt presented at trial, particularly the testimony of the abuse victims, Petitioner cannot show that he was prejudiced by the counsel's

conduct. Petitioner has thus failed to establish that defense counsel was ineffective under the standard set forth in *Strickland, supra*. Habeas relief is not warranted on this claim.

### C. Re-opening of Proofs Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court refused to re-open the proofs for the defense in violation of his right to present a defense and his right to a fair trial and due process. Respondent contents that this claim is not cognizable upon habeas review and lacks merit.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. (internal quotations omitted). Thus, a defendant does not have an unfettered right to offer evidence that is incompetent, privileged or otherwise inadmissible under standard rules of evidence; the exclusion of evidence does not violate the Due Process Clause unless it offends some fundamental principle of justice. *See Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996). "[T]he Constitution leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues....'" *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986) (citations omitted). In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded

"a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690 (quoting

*California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S.

284, 302 (1973).

In this case, the Michigan Court of Appeals denied relief on this claim, stating in

relevant part:

> Defendant next argues that the trial court erred by denying his motion to reopen
> proofs to present additional defense witnesses. After the defense rested,
> defendant informed the judge, in a contentious exchange outside the jury's
> presence, that he did not believe his attorneys were representing his best interests
> because he had witnesses waiting in the hallway who were not called to testify.
> Defendant demanded that his attorneys be discharged from representation. The
> court asked defendant to explain his objections. When he finished, the court
> asked the attorneys for their comments. Defendant repeatedly interrupted the
> attorneys, prompting the judge to order defendant removed from the courtroom.
> Appointed counsel stated that he did not know the identities of the people
> waiting in the hallway, or what their testimony would be, but that he had
> interviewed other witnesses referred by the family and they were not added to
> the witness list because they would not have supplied relevant testimony. After
> a cooling-off period, defendant returned to the room, renewed his objections, and
> asked to have his waiting witnesses testify. The court ruled that the proofs were
> closed and would not be reopened.
>
> A trial court's decision whether to permit the reopening of proofs is reviewed for
> an abuse of discretion. *People v. Herndon*, 246 Mich. App. 371, 419; 633
> N.W.2d 376 (2001). The record discloses only that defendant's retained counsel
> had determined that the witnesses were not able to supply relevant evidence.
> Defendant has not demonstrated that the court abused its discretion by denying
> him the opportunity to reopen the proofs. Moreover, because defendant has
> failed to establish the substance of the proposed testimony, we cannot conclude
> that his rights were prejudiced. *People v. Mateo*, 453 Mich. 203, 215; 551
> N.W.2d 891 (1996) (reversal is required only if the error was prejudicial).

*Davis*, 2004 WL 357989 at *2-3.

The Michigan Court of Appeals did not address this issue as a matter of federal law.

Accordingly, this Court must conduct an independent review of the state court's decision. *See,*

*e.g., Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). This independent review requires the

19

federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 943. This independent review "is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id*.

Having undertaken such review, the Court concludes that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner was not denied due process or the right to present a defense. The record reveals that defense counsel presented two witnesses to testify on Petitioner's behalf at trial and utilized their testimony, as well as cross-examination of the victims, to refute the sexual assault allegations. At trial, defense counsel Perlman informed the trial court that he had spoken to Petitioner's family about witnesses, that he had called the witnesses he was able to use, and that he believed additional witnesses would not have provided relevant and admissible evidence. The record before this Court similarly indicates that Petitioner's proposed additional witnesses would have provided cumulative, only marginally relevant, and/or inadmissible testimony. Petitioner has not shown that the trial court's denial of his request to re-open the proofs was prejudicial. He has failed to establish that he was denied due process or the opportunity to present a meaningful defense. Habeas relief is not warranted on this claim.

### D. Other Acts Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence by allowing two relatives who were not the complaining victims

to testify that they had also been sexually assaulted by Petitioner when they were minors in the care of Petitioner's mother. Respondent contends that this claim is not cognizable upon habeas review and lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994). The United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id*. at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner's claim must fail.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief in this case. The Michigan Court of Appeals upheld the trial court's determination that the

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

disputed evidence was properly admitted as evidence of a common scheme or plan, and noted that the trial court lessened the risk of unfair prejudice by instructing the jury about the proper use of the challenged testimony. *See Davis*, 2004 WL 357989 at *3.

The Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The disputed evidence was properly admitted under Michigan law as evidence of a common scheme or plan. The prosecutor did not make a character or propensity argument and the trial court issued a cautionary instruction to the jury about the proper consideration of the evidence. Petitioner has not shown that the admission of the other acts evidence rendered his trial fundamentally unfair. He is not entitled to relief on this claim.

### E. Sentencing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because his sentence of 75 to 150 years imprisonment exceeds his life expectancy and is illegal. Respondent contends that this claim is not cognizable and/or lacks merit.[2]

Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceed the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). To the extent that Petitioner asserts that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D.

---

[2]Respondent also contends that this claim is unexhausted, but the Court has already addressed that issue. *See* discussion *supra*.

Mich. 1994). There is also no federal constitutional right to individualized sentencing. *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). It is well-established that habeas relief does not lie for perceived errors of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner is also not entitled to relief on any claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *Thomas*, 49 F.3d at 261. Petitioner was sentenced to 75 to 150 years imprisonment on his criminal sexual conduct convictions. The sentence was within the statutory maximum of life imprisonment for a fourth habitual offender. *See* Mich. Comp. L. §§ 750.520b, 750.520c, 769.12. The trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment.

Petitioner also seems to raise a Sixth Amendment challenge to the trial court's sentencing procedure. In *Apprendi v. New Jersey*, 530 U.S. 466, 530 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court applied *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding, held that the state guideline scheme violated Sixth Amendment rights, and reiterated that any fact that increased the maximum sentence must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 232 (2005). Petitioner cites *Booker* in supplemental pleadings challenging his sentence.

This claim lacks merit. The *Booker* line of cases does not apply to Michigan's intermediate sentencing scheme. In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence. Both this Court and the United States District Court for the Western District of Michigan have examined Michigan's indeterminate sentencing scheme and have found no possible Sixth Amendment violation. *See, e.g, Connor v. Romanowski*, No. 05-74074, 2007 WL 1345066 (E.D. Mich. May 4, 2007); *Mays v. Trombley*, No. 2:06-CV-140043, 2006 WL 3104656, * 3 (E.D. Mich. Oct.31, 2006); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, * 2 (W.D. Mich. Nov.30, 2006); *accord People v. Drohan*, 475 Mich. 140, 160-62, 715 N.W.2d 778 (2006). Habeas relief is not warranted on this claim.

### F.      Actual Innocence Claim

Petitioner has submitted recanting statements by Jequanna Davis and other "newly-discovered evidence" in a supplement to his habeas petition and appears to assert that he is entitled to habeas relief because he is innocent. Respondent has not addressed this issue.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. The post-trial recantation of witness testimony does not warrant habeas relief because such evidence goes to the merits of the conviction, not its legality. *See Hence v. Smith*, 37 F. Supp. 2d 970, 980 (E.D. Mich. 1999) (citing cases). Petitioner's claim that he has newly discovered evidence does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001).

Furthermore, federal courts which have suggested that habeas relief could conceivably be granted upon newly-discovered evidence have set an extraordinary showing of a habeas petitioner's innocence before relief could be granted. *See Dell v. Straub*, 194 F. Supp. 2d 629, 657 (E.D. Mich. 2002); *Johnson*, 159 F. Supp. 2d at 606 (collecting cases). Even on direct appeal, motions for a new trial based upon newly discovered evidence are "are disfavored and should be granted with caution." *Monroe*, 197 F. Supp. 2d at 763 (quoting *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000)). When a defendant in federal court makes a motion for a new trial based upon newly discovered evidence, a defendant must show:

1. the evidence was discovered after trial;
2. the evidence could not have been discovered earlier with due diligence;
3. the evidence is material and not merely cumulative or impeaching; and
4. the evidence would likely produce an acquittal if the case were retried.

*Turns*, 198 F.3d at 586-87. Additionally, affidavits by witnesses recanting their trial testimony are viewed "with extreme suspicion." *United States v. Willis*, 257 F.3d 636, 645-46 (6th Cir.

2001); *United States v. Chambers*, 944 F.3d 1253, 1264 (6th Cir. 1991). Petitioner has not met this standard. The record reveals that Jequanna Davis made recanting statements at the time of trial. The witness statements reflect information that was available or could have been discovered at the time of trial, and much of it is immaterial, cumulative, or impeaching rather than relevant to the sexual assault charges. The evidence is not likely to produce an acquittal. Habeas relief is not warranted.

**V.     Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

s/John Corbett O'Meara
United States District Judge

Dated:  May 31, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, May 31, 2007, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager

26